Hampton K. O'Neill (#5-2786)
Patrick R. Tolley (#7-4534)
Welborn Sullivan Meck & Tooley, P.C.
159 North Wolcott, Suite 220
Casper, WY 82601
(307) 234-6907
honeill@wsmtlaw.com
ptolley@wsmtlaw.com

Attorneys for Plaintiff Campbell County Hospital
District, d/b/a Campbell County Health

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF WYOMING

| | | |
|---|---|---|
| CAMPBELL COUNTY HOSPITAL DISTRICT, D/B/A CAMPBELL COUNTY HEALTH, | ) ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | Case No. |
| UTAH MEDICAL INSURANCE ASSOCIATION, | ) ) ) | |
| Defendant. | ) ) | |

## COMPLAINT FOR DECLARATORY JUDGMENT AND OTHER RELIEF

Plaintiff Campbell County Hospital District, d/b/a Campbell County Health ("Plaintiff" or "CCH"), by and through counsel, Hampton K. O'Neill and Patrick R. Tolley, of Welborn Sullivan Meck & Tooley, P.C., by this Complaint pleads and alleges causes of action against the above-named Defendant as follows:

## NATURE OF THE COMPLAINT

1.      CCH is currently a defendant in a related medical malpractice case now pending in the United States District Court for the District of Wyoming, entitled *April Polk v. Dr. Ian Swift, WYO ENT P.C., Campbell County Health, Campbell County Memorial Hospital* (hereinafter "*Polk*"), Case No. 19-CV-148-SWS.

2.      After this Court's October 1, 2020 oral ruling in *Polk*, which granted in part and denied in part CCH's motion for partial summary judgment [*Polk* Doc. 60], there remains an issue as to the amount and nature of insurance coverage which may be available to CCH to satisfy Ms. Polk's claims, by way of any settlement or judgment, assuming liability is established.

3.      The parties in *Polk* are not the appropriate parties to address these coverage issues, so this suit is necessary to determine the amounts of insurance coverage available to CCH in *Polk*.

4.      CCH is an insured of Defendant Utah Medical Insurance Association ("UMIA"), which has issued various policies to CCH, some or all of which may provide certain coverages to CCH for the claims asserted against it in *Polk*.

5.      CCH therefore brings this suit to obtain a judicial determination of its rights and available coverages under its applicable insurance contracts with UMIA for the claims asserted against it in *Polk*.

6.      This Court has the authority to declare the rights and obligations of the parties under the terms and provisions of the insurance policies at issue in this lawsuit, pursuant to 28 U.S.C. Sec. 2201(a) and Rule 57 of the Federal Rules of Civil Procedure.

## JURISDICTION, VENUE AND PARTIES

7.      At all pertinent times, Plaintiff CCH was, and remains, a Wyoming Special District established under W.S. §§ 35-2-401, *et seq.,* with its principal place of business located at 501 South Burma, Gillette, WY 82716.  CCH owns and operates Campbell County Memorial Hospital in Gillette, Wyoming.

8.      Upon best information and belief, defendant UMIA is a Utah corporation in good standing with its principal place of business in Salt Lake City, Utah.

9.      This Court has jurisdiction over this action under 28 U.S.C. Sec. 1332(a)(1) and (c)(1).  Plaintiff CCH and UMIA are citizens of different states, and the amount in controversy by and between CCH and UMIA exceeds $75,000, exclusive of interest and costs of suit.  Furthermore, CCH seeks defense and indemnification from UMIA with respect to the claims and damages asserted by Ms. Polk.

10.     Venue is proper in this Court pursuant to 28 USC Sec. 1391(b)(2) because UMIA's duties to defend and indemnify CCH are situated in this Judicial District, which is also the situs of the damages claimed by Ms. Polk against CCH.  The performance claimed to be due to or for the benefit of CCH from UMIA occurred or would occur in this Judicial District in whole or in substantial part.

### FACTUAL BACKGROUND, THE POLICIES, AND CCH'S TENDER OF DEFENSE TO UMIA

11.     UMIA issued to CCH Policy Number WY920035, effective January 1, 2018 to January 1, 2019 ("Policy 35"), which provided Facility Medical Professional Liability Insurance and General Liability Insurance.  Policy 35 is Doc. 40-4 in *Polk*, attached as Exhibit "D" to CCH's Memorandum in Support of their Motion for Partial Summary Judgment, [*Polk* Doc. 40], filed July 17, 2020.

12.     UMIA also issued to CCH Policy Number WY920048, effective January 1, 2018 to January 1, 2019 ("Policy 48"), which provided Facility Medical Professional Liability Insurance and General Liability Insurance.  Policy 48 is Doc. 47-3 in *Polk*, attached as Exhibit 3 to Plaintiff's Response to CCH's Motion for Partial Summary Judgment, [*Polk* Doc. 47], filed August 14, 2020.

13.     UMIA also issued to CCH, as a member of Mountain States Healthcare Risk Purchasing Group, Policy Number WY920049 effective January 1, 2018 to January 1, 2019 ("Policy 49"), which provided two layers of excess liability insurance.  Policy 49 is Doc. 47-4 in *Polk*, attached as Exhibit 4 to Plaintiff's Response to CCH's Motion for Partial Summary Judgment, [*Polk* Doc. 47], filed August 14, 2020.

14.     In relevant part, Policy 35 provides Facility Medical Professional Liability insurance coverages on Each Medical Incident Limit of $1,000,000.00 and a Policy Period Aggregate of $5,000,000.00; Policy 48 provides coverages of Each Medical Incident Limit of $1,000,000.00 and an Aggregate Limit of $3,000,000.00; and Policy 49 provides coverages of Each Claim Limit of $20,000,000.00 and Total Aggregate of $80,000,000.00, respectively.  Policy 35, Policy 48, and Policy 49 are together referred to as "the Policies".

15.     Ms. Polk's Complaint [*Polk* Doc. 1] stated claims against CCH which triggered UMIA's duty to defend CCH.

16.     CCH timely tendered the defense of the *Polk* case to UMIA on October 22, 2018, and pursuant to Policy 35, UMIA agreed to defend CCH from the *Polk* claims subject to a reservation of rights to deny coverage.  The UMIA December 27, 2019 reservation of rights letter to CCH is Doc. 47-2 in *Polk*, and is attached as Exhibit 2 to Plaintiff's Response to CCH's Motion for Partial Summary, [*Polk* Doc. 47], filed August 14, 2020.

17.     Attached as Exhibit 3 in support of its motion for partial summary judgment, CCH's defense counsel in *Polk* submitted Derek Gordon's affidavit, dated July 16, 2020. [*Polk* Doc. 40-3].

18.     In this affidavit, Mr. Gordon explains that he "[has] been employed as the Director of Underwriting with Constellation Mutual continuously since November of 2018." *Id.*

at p. 2 of 4. Mr. Gordon noted that "UMIA is one of the insurance companies under the Constellation umbrella of medical professional liability companies." *Id.* Mr. Gordon goes on to state:

> 4.      UMIA provided its applicable Facility Medical Professional Liability Policy to Campbell County Health n/k/a Campbell County Hospital District for the policy period January 1, 2018 – January 1, 2019, Policy No. WY920035 [Policy 35]. A certified copy of the UMIA liability insurance Policy applicable to April Polk's Complaint against the hospital is attached to my Affidavit as "Exhibit 1". UMIA issued a renewal Policy to the hospital for the January 1, 2019 – January 1, 2020 policy year (2019 UMIA Policy).
>
> 5.      The 2018 Policy [Policy 35] **is the** applicable UMIA liability policy for defending April Polk's claims against the hospital. **There is no other liability policy applicable** to April Polk's claims against the hospital.

*Id.* at p. 3 of 4 (emphasis added).

19.      CCH's defense counsel in Polk also submitted, as Exhibit "E" in support of CCH's motion for partial summary judgment, the affidavit of Erin Barkley, dated July 17, 2020. [*Polk* Doc. 40-5].

20.      Ms. Barkley, in her affidavit, explains that she is "an active member of the Wyoming State Bar," and that she is "currently employed as a claim consultant with Constellation Mutual." *Id.* at p. 2 of 5. Ms. Barkley goes on to state that she is "the primary claim consultant for UMIA with respect to the medical and hospital malpractice claims presented and/or filed against UMIA's named insured, Campbell County Health a/k/a Campbell County Memorial Hospital ("CCMH" or "the hospital")". *Id.*

21.      Ms. Barkley also states that "I have read Derek Gordon's Affidavit and **agree with everything in his Affidavit**." *Id.*

22.      Even though Mr. Gordon and Ms. Barkley may *believe* that Policy 35 is the only UMIA policy that provides coverage for Ms. Polk's claims, it would appear, from their plain

language, that Policies 48 and 49 also arguably provide coverage for Ms. Polk's claims.  It is unknown why Mr. Gordon and Ms. Barkley made the sworn statements that they did.

23.     An actual controversy exists between CCH and UMIA regarding UMIA's obligations under the Policies in connection with the Polk claims, which dispute is ripe for judicial determination.

24.     Any preconditions to the assertion of this action have been met.

25.     CCH seeks judicial determination of its rights and coverages under the Policies pursuant to 28 U.S.C. Sec. 2201-2202 and Rule 57 of the Federal Rules of Civil Procedure.

## COUNT I

### Declaratory Judgment – The Insuring Agreement to Coverage in Policy 35 Has Been Triggered By Way of the Allegations Contained in the *Polk* Complaint

26.     CCH incorporates by reference the allegations set forth in the previous paragraphs.

27.     The Facility Medical Professional Liability Insurance Claims Made and Reported part of Policy 35 states, in pertinent part:

SECTION ONE – INSURING AGREEMENT

A.  We will pay *damages* an *insured* is legally required to pay as a result of a *medical incident* that happens on or after the applicable *prior acts date* and before the expiration date of this insurance.  To fall within this insuring agreement the *claim* must be first made against the *insured* and reported to us during the *policy period* or any applicable *extended reporting period*.

Doc. 40-4 in *Polk*, p. 11 of 65.

28.     As is relevant here, the above identified terms are defined in Policy 35 as follows:

A.  *Claim* means a demand for money or services resulting from a *medical incident*.

B. *Damages* means amounts that an *insured* is legally obligated to pay to compensate another for injury or damage resulting from a *medical incident*.

J. *Medical incident* means an adverse or unanticipated outcome resulting from *professional services* that were, or should have been, provided by an *insured* or by a person for whom the *insured* is liable.

K. *Peer review service* means evaluating the professional qualifications of another under the auspices of a formal review board or committee.

O. *Professional services* means medical care or treatment provided to a patient, a medical opinion rendered by an *insured*, decisions made that require the specialized skill, training or judgment of a health care professional, or *peer review service*.

*Id.* at pps. 12-13 of 65.

Policy 35 also contains a "Limitation of Coverage Endorsement," which states:

This Policy only covers those **claims** against the **insureds** of this policy which are included in the Wyoming Governmental Claims Act (Wyoming Statutes, Title 1, Chapter 39, Sections 101-121), portions of which are listed below:

1-39-109.  Liability; medical facilities.

A governmental entity is liable for damages resulting from bodily injury, wrongful death or property damage caused by the negligence of public employees while acting within the scope of their duties in the operation of any public hospital or in providing public outpatient health care.

1-39-118.  Maximum liability; insurance authorized.

(a) Except as provided in subsection (b) of this section, in any action under this act, the liabilities of the governmental entity, including a public employee while acting within the scope of his duties, shall not exceed:

   (i) The sum of two hundred fifty thousand dollars ($250,000.00) to any claimant for any number of claims arising out of a single transaction or occurrence; or

   (ii) The sum of five hundred thousand dollars ($500,000.00) for all claims of all claimants arising out of a single transaction or occurrence.

1-39-110.  Liability; health care providers.

(a) A governmental entity is liable for damages resulting from bodily injury, wrongful death or property damage caused by the negligence of health care providers who are employees of the governmental entity, including contract physicians, physician assistants, nurses, optometrists and dentists who are providing a service for state institutions or county jails, while acting within the scope of their duties.

(b) Notwithstanding W.S. 1-39-118(a), for claims under this section against a physician, physician assistant, nurse, optometrist or dentist employed by a governmental entity based upon an act, error or omission occurring on or after May 1, 1988, the liability of a government entity shall not exceed the sum of one million dollars ($1,000,000.00) to any claimant for any number of claims arising out of a single transaction or occurrence nor exceed the sum of one million dollars ($1,000,000.00) for all claims of all claimants arising out of a single transaction or occurrence.

**There is no coverage under this policy for claims which are not included in W.S. 1-39-101−121.**

*Id.* at p. 58 of 65.

29.     Ms. Polk's remaining claim against CCH is a claim for vicarious liability for Dr. Swift's negligence, which is expressly permitted by W.S. 1-39-110.

30.     Under W.S. § 1-39-110, a governmental entity's liability, such as CCH's in this case, is limited to $1,000,000.00 unless that government entity purchases liability insurance coverage that exceeds that statutory limit and, in that case, liability is extended to the coverage. W.S. § 1-39-110(b), W.S. § 1-39-118(b)(i), and *Memorial Hospital of Sweetwater County v. Menapace*, 404 P.3d 1179, 1185 (Wyo. 2017).

## COUNT II

### Declaratory Judgment - The Insuring Agreement to
### Coverage in Policy 48 Has Been Similarly Triggered

31.     CCH incorporates by reference the allegations set forth in the previous paragraphs.

32.    CCH's defense counsel in *Polk* correctly noted that, with some minor exceptions,

Policy 35 and Policy 48 share nearly identical policy language:

> With the exception of the Policy number, the difference in limits of liability for both the Facility Medical Professional Liability Insurance and the limits of liability for General Liability Insurance for both Policy 35 [ECF No. 40-4 at CCMH/PRSCINS00002] and Policy 48 [ECF No. 47-3 at CCMH/PRSCINS00210], the Policyholder Disclosure Notice of Terrorism Insurance Coverage in Policy 35 [ECF No. 40-4 at p. CCMH/PRSCINS00004], the different language on the Limitation of Coverage Endorsement on Policy 35 [ECF No. 40-4 at p. CCMH/PRSCINS00057] and the Exclusion of Coverage Endorsement in Policy 48 [ECF No. 47-3 at p. CCMH/PRSCINS00264], the language in the Policies are **identical**.  Importantly, as written, both Policy 35 and Policy 48 provide coverage for claims allowed by the WGCA – Plaintiff's tort claims, Claim I and IV.  Policy 49 [ECF No. 47-4], only provides coverage in excess of the Policies listed on that Policy's declaration page, including Policy 48. *See* ECF No. 47-4 at p. CCMH/PRSCINS00182-183.

CCH's Reply in Support of Motion for Partial Summary Judgment, [*Polk* Doc. 53], at pps. 4-5 of

11.

33.    Policy 48 has a similar endorsement, entitled "Exclusion of Coverage

Endorsement," but it is worded slightly differently, as follows:

> This policy will not provide coverage for *claims* against the *insured* which are barred by Title 1, Chapter 39, Sections 101-121, of the Wyoming Statutes, known and cited as [the] Wyoming Governmental Claims Act.

Doc. 47-3 in *Polk*, p. 57 of 62.

34.    While the language of Policy 48's "Exclusion of Coverage Endorsement" is

different from Policy 35's "Limitation of Coverage Endorsement," they nonetheless say

essentially the same thing, i.e., that coverage is provided for claims covered by the Wyoming

Governmental Claims Act.

35.    As noted in this Court's October 1, 2020 oral ruling on CCH's motion for partial

summary judgment, Doc. 61 in *Polk*, the vicarious liability claim against CCH for Dr. Swift's

alleged negligence has not been dismissed and still remains, and is a claim which expressly falls under and is allowed by W.S. 1-39-110.

36.     Accordingly, based on the plain language of Policy 48's "exclusion of Coverage Endorsement," it would appear that Policy 48, just like Policy 35, also arguably provides coverage for Ms. Polk's remaining vicarious liability claim against CCH.

**COUNT III**

**Declaratory Judgment – The Insuring Agreement to
Coverage in Policy 49 Has Been Similarly Triggered**

37.     CCH incorporates by reference the allegations set forth in the previous paragraphs.

38.     Policy 49 [*Polk* Doc. 47-4], by its terms provides excess coverage over only those policies which are listed on that Policy's declarations page. *See Id.*, at pps. 25-26 of 50.

39.     Policy 48 is one of the policies that is expressly listed on Policy 49's declarations page. *Id.*

40.     Accordingly, Policy 49 appears to add, on top of Policy 48's limits, an additional $20,000,000 in coverage for "Each Claim Limit," Layer 1, and potentially another $13,000,000 in "Professional Liability Aggregate Limit" in Layer 2, for those claims asserted by Ms. Polk against CCH. *Id.*

WHEREFORE, CCH respectfully prays for a speedy hearing in accordance with Federal Rule of Civil Procedure 57 and a declaratory judgment pursuant to the authority set forth in Rule 57 and 28 U.S.C. §§ 2201 and 2202 adjudging and determining the rights and obligations of the parties under the Policies including, but not limited to, the following:

(a)     whether UMIA owes a defense and indemnity to CCH under the Policies in relation to the claims asserted against CCH in *Polk*;

(b)    which of the Policies provide coverage for the claims asserted against CCH in *Polk*;

(c)    the applicable amount of available coverage under the Policies to satisfy the claims asserted against CCH in *Polk*;

(d)    that CCH should be awarded its attorney's fees, costs, and expenses as permitted by law; and

(e)    that CCH should be granted such other relief as the Court deems fair and proper.

Respectfully submitted this 6th day of November, 2020.

CAMPBELL COUNTY HOSPITAL
DISTRICT, D/B/A CAMPBELL COUNTY
HEALTH, Plaintiff

By: _____
HAMPTON K. O'NEILL, #5-2786
PATRICK R. TOLLEY, #7-4534
Welborn Sullivan Meck & Tooley, P.C.
159 North Wolcott, Suite 220
Casper, WY 82601
(307) 234-6907
honeill@wsmtlaw.com
ptolley@wsmtlaw.com